## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW SON,** | : | |
| *Plaintiff,* | : | |
| v. | : | **CIVIL NO. 23-5177** |
| | : | |
| **DELAWARE COUNTY INTERMEDIATE** | : | |
| **UNIT, *et al.*,** | : | |
| *Defendants.* | : | |

### MEMORANDUM

**Scott, J.**                                                                                              **November 5, 2024**

Plaintiff Andrew Son ("Plaintiff") brings this action against Defendants Delaware County Intermediate Unit ("DCIU"), Delaware County Intermediate Unit Aston Education Center, Delaware County Intermediate Unit Education Center, John Doe 1–5, and John Doe Public Entity 1–5 (collectively, "Defendants") alleging the following four counts: (Count I) Failure to Train, Supervise, and Discipline in violation of 42 U.S.C. § 1983 against all Defendants; (Count II) State Created Danger in violation of 42 U.S.C. § 1983 against all Defendants; (Count III) Negligence against Defendants John Doe 1–5; and (Count IV) Negligent Failure to Rescue against Defendants John Doe 1–5. Presently before the Court is Defendant DCIU's[1] Motion to Dismiss (ECF No. 8), which has been fully briefed. ECF Nos. 9 (Pl.'s Opp'n), 10 (DCIU's Reply), 11 (Pl.'s Sur-Reply). For the reasons that follow, the Court will grant the Motion (ECF No. 8). An appropriate Order will follow.

---

[1]     As indicated in DCIU's Motion to Dismiss, Delaware County Intermediate Unit Education Center and Delaware County Intermediate Unit Aston Education Center are alternate names for educational facilities operated by DCIU and are improperly named as they are not legal entities separate from DCIU. *See* ECF No. 8-1 at 2–3. In responding to DCIU's Motion to Dismiss, Plaintiff did not dispute this fact. *See generally* ECF No. 9. Accordingly, Delaware County Intermediate Unit Education Center and the Delaware County Intermediate Unit Aston Education Center will be dismissed from this action.

I.    **FACTUAL BACKGROUND**[2]

The DCIU Education Center is an alternative school for children and adolescents in Delaware County who have learning, emotional, or behavioral disorders. ECF No. 5, Am. Compl. ¶ 33. On November 15, 2021, Plaintiff was at the DCIU Education Center to perform social work, counseling, and group therapy services to the students on behalf of his third-party employer, Prospect Medical Holdings, Inc. ECF No. 5, Am. Compl. ¶¶ 11–12, 33. Despite the fact that the students were at all times supposed to be overseen and under the care and supervision of a certified teacher or other DCIU staff, employees, or agents, while he was there, Plaintiff was left alone with the students and was "violently attacked, assaulted, beaten and punched by a minor, J.R." *Id.* ¶¶ 14–15. As a result of the incident, Plaintiff sustained bodily injuries, emotional trauma, medical expenses, and lost income. *Id.* ¶¶ 92–98.

Defendants knew that J.R. "had a long history of other incidents of violence and of other attacks toward staff and students at DCIU, including an attack approximately one week prior to the November 15, 2021 assault at issue." *Id.* ¶¶ 42–44. Moreover, Defendants were aware that Plaintiff, and other teachers, had sustained injuries prior to the November 15, 2021 incident due to assaults and attacks by unsupervised students. *Id.* ¶¶ 35–41. In fact, Plaintiff, his direct supervisor, and others made complaints prior to the incident at issue "regarding their concerns about the frequency with which students were not supervised and the dangers they posed, as well as issues with understaffing and the resulting lack of security and supervision." *Id.* ¶¶ 35–36. Nevertheless, Defendants "affirmatively acted by placing the Plaintiff with the student J.R. and other unsupervised students," "purposefully chose not to warn Plaintiff," and "purposefully chose to

---

[2]    The following facts are taken from the Amended Complaint (ECF No. 5) and are accepted as true in deciding the Motion to Dismiss.

2

understaff the school to save money." *Id.* ¶¶ 25–46. Moreover, Defendants did not have policies, procedures, and training in place to prevent the harm that occurred. *Id.* ¶¶ 51–60.

## II.   **PROCEDURAL HISTORY**

On November 9, 2023, Plaintiff instituted this action in the Delaware County Court of Common Pleas asserting negligence and § 1983 claims. ECF No. 1-1. Thereafter, on December 29, 2023, DCIU removed the action to this Court and proceeded to file a Motion to Dismiss on January 5, 2024. ECF Nos. 1, 3. In response, on January 19, 2024, Plaintiff filed an Amended Complaint (ECF No. 5), rendering DCIU's Motion to Dismiss moot. ECF No. 7. On February 9, 2024, DCIU filed the pending Motion to Dismiss. ECF No. 8. Plaintiff filed a Response in Opposition (ECF No. 9), DCIU filed a Reply in Support of its Motion (ECF No. 10), and Plaintiff filed a Sur-reply (ECF No. 11). Accordingly, the Motion has been fully briefed and is ripe for resolution.

## III.   **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the

light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

## IV. DISCUSSION

Plaintiff's Amended Complaint asserts two claims against Defendants pursuant 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege (1) "a deprivation of a federally protected right" and (2) that the "deprivation was committed by one acting under color of state law." *Lake v. Arnold*, 112 F.3d 683, 689 (3d Cir. 1997). Here, Plaintiff alleges that Defendants violated his constitutional rights under the "state-created danger" theory and that Defendants violated those rights under the theory outlined in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In addition to Plaintiff's federal claims, Plaintiff also asserts two state law claims. The Court will first address each § 1983 theory and then address Plaintiff's state law claims.

### A. Plaintiff's State-Created Danger Claim

"Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals." *Sanford v. Stiles*, 456 F.3d 298, 303–04 (3d Cir. 2006) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198–200 (1989)). However, an exception exists "when a state-created danger is involved." *Id.* at 304 (internal quotations and citation omitted). To invoke the state-created danger exception, a plaintiff must plead four elements:

> 1) the harm ultimately caused was foreseeable and fairly direct;
> 2) a state actor acted with a degree of culpability that shocks the conscience;
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the

> defendant's acts, or a member of a discrete class of
> persons subjected to the potential harm brought about by
> the state's actions, as opposed to a member of the public
> in general; and
>
> 4) a state actor affirmatively used his or her authority in a
> way that created a danger to the citizen or that rendered
> the citizen more vulnerable to danger than had the state
> not acted at all.

*Morrow v. Balaski*, 719 F.3d 160, 177 (quoting *Bright v. Westmoreland Cnty.,* 443 F.3d 276, 281

(3d Cir. 2006)).

The fourth element—the "affirmative act" element—is "typically the most contested," as

it is here. *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 242 (3d Cir. 2016). "Under this element,

'[t]here must be a direct causal relationship between the affirmative act of the state and plaintiff's

harm.'" *Ivers v. Brentwood Borough Sch. Dist.*, No. 23-1799, 2024 WL 1088447, at *4 (3d Cir.

Mar. 13, 2024) (citation omitted). The purpose of the fourth element is "to distinguish cases where

state officials might have done more, from cases where officials created or increased the risk

itself." *Keener v. Hribal*, 351 F. Supp. 3d 956, 974 (W.D. Pa. 2018) (citing *Morrow*, 719 F.3d at

179). Thus, the "requirement ensures that defendants are only liable for 'misuse of state authority,

rather than a failure to use it.'" *Gayemen v. Sch. Dist. of City of Allentown*, 712 F. App'x 218, 220

(3d Cir. 2017) (citations omitted). Given this requirement, the Third Circuit has "repeatedly held

that an alleged failure *to do something*, standing alone, cannot be the basis for a state-created

danger claim." *Johnson v. City of Philadelphia*, 975 F.3d 394, 401 (3d Cir. 2020) (citation

omitted); *see also Luu v. Esterly*, 367 F. Supp. 3d 335, 348 (E.D. Pa. 2019) ("[T]he Third Circuit

. . . has routinely held that an alleged failure to enforce its own policies is not equivalent to an

affirmative act." (collecting cases)); *Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022) (holding

"failures to warn are not affirmative acts").

5

The Third Circuit has acknowledged, however, that "drawing a line between an affirmative act and a failure to act" is inherently difficult. *Johnson*, 975 F.3d at 401 (internal quotations and citation omitted). Because of this, the Third Circuit sometimes frames the inquiry "as asking whether a defendant's exercise of authority resulted in a departure from th[e] status quo." *Id.* at 401–02 (internal quotations and citation omitted). If the contested action was only "a maintenance of the status quo," the action is insufficient to create liability. *L.R.*, 836 F.3d at 243–44.

Here, Plaintiff's allegations fall short of meeting the affirmative act requirement. Instead, the contested actions here amount to complaints about the status quo. In attempting to plead an affirmative act, Plaintiff alleges that that DCIU "acted in the affirmative" by, *inter alia*, "understaffing the Education Center," "assigning Plaintiff to J.R. . . . without appropriate warning," "assigning Plaintiff to J.R. . . . without providing certified [individuals] to supervise, control or restrain said students," and "assigning Plaintiff to J.R. and other students without required supervision." Am. Compl. ¶ 68. Despite Plaintiff's use of active verbs, viewing the Amended Complaint as a whole, it is clear that the gist of Plaintiff's allegations is that the status quo at DCIU Education Center was a dangerous environment from which DCIU failed to protect Plaintiff. The maintenance of this dangerous status quo does not suffice to create liability. *See, e.g., Pagan v. City of Philadelphia*, No. 11-cv-5178, 2012 WL 1965386, at *5 (E.D. Pa. May 31, 2012) ("[T]he Third Circuit has rejected state-created danger claims in cases involving student-on-student school violence, even when school officials were alleged to have known of dangerous conditions within the school or in a particular classroom."); *see also K.W. v. Se. Pennsylvania Transportation Auth.*, 760 F. App'x 104, 108 (3d Cir. 2019) (holding "SEPTA Defendants' failure to remediate an allegedly known risk does not constitute an affirmative act that satisfies the fourth element of a state-created danger claim").

Plaintiff attempts to sidestep the dangerous status quo of the DCIU Education Center by arguing that "DCIU created the dangerous condition by placing a number of students with severe behavioral and emotional needs and disorders and histories of violence in one location, and then further exacerbated the dangerous condition by" failing to adequately staff the DCIU Education Center and then deciding not to warn staff. ECF No. 11 at 2. However, to accept such an argument would expand the state-created danger exception and make schools liable for any injury. *See Morrow*, 719 F.3d at 178 (rejecting a reading of the "affirmative action" element that would make the "state-created danger *exception* [] swallow the rule"). The Court refuses to expand the state-created danger theory in such a drastic way.

The Court does recognize that the act of "assigning" Plaintiff to J.R.'s classroom is an affirmative act; however, "an affirmative act by [Defendants] is not enough." *Tillman-Williams v. Se. Pennsylvania Transportation Auth.*, No. 23-cv-3009, 2023 WL 6465388, at *4 (E.D. Pa. Oct. 3, 2023). Rather, the affirmative act "must '*create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process.'" *Id.* (quoting *Morrow*, 719 F.3d at 177). To create or enhance a danger, "the affirmative act 'must amount to a restraint of personal liberty that is similar to incarceration or institutionalization.'" *Id.* (quoting *Mears*, 24 F.4th at 884). Assignment of Plaintiff to J.R.'s class does not satisfy this requirement. *See, e.g., H.J. by Wells v. Delaplaine McDaniel Sch.*, No. 17-3229, 2017 WL 5901096, at *4 (E.D. Pa. Nov. 30, 2017) ("[F]or H.J.'s complaint to rise to the level of a state-created danger, she would need to allege facts that show an active effort on the part of the school to encourage bullying, and an effort to make the school a less safe place for the children."). Plaintiff voluntarily undertook hazardous employment where a risk of harm was inherent in the workplace. *Cf. Kedra v. Schroeter*, 876 F.3d 424, 436 n.6 (3d Cir. 2017) ("a government employee may bring a substantive due process claim

7

against his employer if the state compelled the employee to be exposed to a risk of harm not inherent in the workplace"). Moreover, this is not a situation where Plaintiff's freedom of movement was restricted. *Compare L.R.*, 836 F.3d at 243 (explaining typical kindergarten classroom where the students are closely supervised and their freedom of movement is restricted); *see also Mears v. Connolly*, 24 F.4th 880 (plaintiff's movements within state-run psychiatric hospital were restricted to inside visiting room). Rather, it is Defendants' failure to supervise, rather than the affirmative act of assigning Plaintiff to a classroom, that is truly at issue.

This conclusion aligns with precedent within this district which "refute[s] the suggestion that simply placing a student in a school officials know to be dangerous constitutes the affirmative act necessary to support such claims." *Pagan*, 2012 WL 1965386, at *6 (collecting cases). If placing a student does not suffice to support such a claim, it follows that placing a student aid in a school known to be dangerous does not suffice. *See also Brown v. Newell*, No. 1:18-CV-377, 2019 WL 4242031, at *4–5 (W.D. Pa. Sept. 6, 2019) (finding no state-created danger claim in case where plaintiff phlebotomist employed by private employer providing contracted services to prison was violently kicked by prisoner from whom she was drawing blood). The Court finds persuasive the Fourth Circuit's recent decision in *Burns-Fisher v. Romero-Lehrer*, 57 F.4th 421 (4th Cir. 2023), which involved extremely similar facts. There, a teacher was attacked by a special education student and was seeking to recover for her injuries. *Id.* at 423. The Fourth Circuit rejected the attempt to "recast the [principal's] knowledge of the [special education student's] prior acts of violence and creation of the staffing schedule which required [the teacher] to teach the [special education student] on the day of the incident—without a second teacher in her classroom—as affirmative acts" that created the danger that resulted in the teacher's injuries. *Id.* at 425. Here, like

in *Burns-Fisher*, Plaintiff's attempt to recast omissions into acts fails.[3] Simply put, DCIU did not harm Plaintiff, it just did not prevent his injury.

Because the Amended Complaint does not sufficiently allege that DCIU acted affirmatively to create a danger to Plaintiff or render him more vulnerable to danger than had the officials not acted at all, Plaintiff has failed to state a claim for a violation of Plaintiff's substantive due process rights under the state-created danger theory. Accordingly, this claim must be dismissed.

### B. Plaintiff's *Monell* Claim

In *Monell*, the United States Supreme Court held that "[l]ocal governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690. However, to plead such a claim, there must be "a predicate constitutional violation." *K.W.*, 760 F. App'x at 109 (citations omitted); *see also Johnson*, 975 F.3d at 403 n.13 (explaining "for *Monell* liability to attach, 'there must still be a violation of the plaintiff's constitutional rights'" (citations omitted)). As discussed *supra*, Plaintiff has not alleged a constitutional violation, and therefore, Plaintiff's *Monell* claim fails. *See Gomez v. Se. Pennsylvania Transportation Auth.*, No. 22-3230, 2023 WL 5950549, at *2 (3d Cir. Sept. 13, 2023) (dismissing plaintiff's *Monell* claim because defendants did not create danger resulting

---

[3]     Plaintiff relies heavily on an Order issued in *Legrande v. Downington Area School District*, Case No. 21-cv-78, ECF No. 16 (June 23, 2021). Therein Judge Diamond, despite noting that "there is much to recommend Defendants' contention" that the Complaint at most supports a negligent failure to warn theory, denied a motion to dismiss finding the plaintiff—a school aide that was tripped by a student—had adequately alleged a state-created danger because "Defendants took affirmative action increasing the risk of injury by assigning Plaintiff to work with that particular student shortly before the tripping." *Id.* However, this Order is not binding on this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

in harm); *Cappel v. Aston Twp. Fire Dep't*, 693 F. Supp. 3d 467, 489 (E.D. Pa. 2023) (dismissing *Monell* claim because complaint failed to state plausible constitutional claim). Accordingly, the Court must dismiss Count II.

### C. Plaintiff's State Law Claims

In addition to his § 1983 claims, Plaintiff brings two state law claims. However, pursuant to 28 U.S.C. § 1367(c)(3), a federal court may decline to exercise supplemental jurisdiction over state law claims when it dismisses all claims over which it has original jurisdiction. *See, e.g.*, *Doe v. Mercy Medical Center*, 850 F.3d 545, 567 (3d Cir. 2017) (citing *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 174 (3d Cir. 2009)). Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims and will dismiss these claims without prejudice to be refiled in state court. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009).

### V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 8) will be granted and Plaintiff's Amended Complaint (ECF No. 5) will be dismissed. Because the defects in Plaintiff's pleading cannot be cured through further amendment, the federal claims in his Amended Complaint will be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (observing that absent inequity or futility, courts must allow a plaintiff leave to amend a complaint). The state law claims will be dismissed without prejudice. An appropriate Order will follow.

**BY THE COURT:**

**HON. KAI N. SCOTT**
**United States District Court Judge**

10